# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**DORA RENEE SHEAN,**

      **Plaintiff,**

**vs.**                                                   **Case No. 4:24cv529-MW-MAF**

**SHEVAUN HARRIS, et al.,**

      **Defendants.**

_____/

## SECOND REPORT AND RECOMMENDATION

In June 2025, a Report and Recommendation, ECF No. 43, was entered, recommending that the pro se Plaintiff's complaint, ECF No. 1, be dismissed for lack of subject matter jurisdiction pursuant to the "domestic relations" exception to federal court jurisdiction.  In addition, it was concluded that Plaintiff's claims were primarily based on events which were time barred.  ECF No. 43.  The recommendation was accepted in part, but rejected in part.  ECF No. 53.  Plaintiff was granted leave to amend if she could, "in good faith, allege facts to support her argument that the statute of limitations is tolled for any of her claims . . . ."  ECF No. 53 at 5.  Her deadline to file an amended complaint was "on or before July 28 2025."  *Id.*

Plaintiff belatedly filed a motion for an extension of time, ECF No. 56, which was granted, ECF No. 57, and her amended complaint, ECF No. 58, was filed on August 6, 2025.  Thereafter, two motions to dismiss were filed, ECF Nos. 59 and 60, and other Defendants filed a notice of joinder, ECF No. 61, adopting the arguments raised in the second motion to dismiss, ECF No. 60.

Plaintiff was directed to file her opposition to those motions by September 22, 2025.  ECF No. 62.  Plaintiff did file "opposition," ECF No. 63, although she failed to clearly indicate which of the two motions her opposition addressed.  Plaintiff submitted numerous arguments, but did not provide any citation to the corresponding motion to dismiss.  It will be assumed that Plaintiff's opposition is in response to both motions to dismiss.

In November 2025, two additional Defendants (Daena and Robert Legacy) filed a separate motion to dismiss.  ECF No. 66.  Plaintiff was given until December 15, 2025, to file a response in opposition to that motion.  ECF No. 67.  As of this date, Plaintiff has not filed a response and the third motion to dismiss, ECF No. 66, is deemed to be unopposed.

**Allegations of the First Amendment Complaint, ECF No. 58[1]**

Plaintiff's amended complaint[2] is once again brought against a
multitude of Defendants - 22 in all.  ECF No. 58 at 1.  Plaintiff seeks to
bring claims under 42 U.S.C. § 1983 and the False Claims Act, 31 U.S.C. §
3729-3733.  *Id.* at 2-3.  Her § 1983 claims are based on alleged violations
of Plaintiff's First, Fourth, Fifth, Seventh, and Eighth Amendment rights.  *Id.*
at 2-3.  In particular, Plaintiff asserts her "constitutional rights to free
speech, freedom of petition, freedom from unlawful search and seizure,
rights to fair trials and due process, rights to trial by jury, rights to not be
retaliated against with cruel and unusual punishments."  *Id.* at 2.

Plaintiff's amended complaint [hereinafter "complaint"] explains that
Plaintiff is the biological maternal grandmother of four children who were
"removed and adopted" by Defendants Andrea and James Douglas.  *Id.* at
5.  The children were removed from Plaintiff's biological daughter, Brianna,

---

[1] Only relevant factual allegations have been included, and only allegations which
pertain to named Defendants in this case.  Plaintiff included numerous irrelevant facts
and events which are not related to named Defendants, *see* ECF No. 58 at 11-12, 16-
17, are 26-27, but those are omitted in this Report and Recommendation.

[2] As an initial observation, Plaintiff's complaint does not comply with the Rules of
this Court.  Her complaint, ECF No. 58, is 56 pages long.  The Local Rules of this Court
state that a "petition, motion, or complaint, together with any memorandum, must
not exceed 25 pages, unless the Court authorizes it."  N.D. Fla. Loc. R. 5.7(B).  Plaintiff
was not authorized to exceed the page limitation.

in August of 2016.  *Id.* at 8.  It appears that Defendant Porter (an investigator employed by the Department of Children and Families ["DCF"]) "dropped all four children off" with the Legacy Defendants on August 17, 2016, to serve as foster parents, although Plaintiff claims the "two oldest children were never biologically related to the Legacys."  *Id.* at 9.

As background information, Plaintiff alleges that there were initial discussions with the Legacy Defendants for Plaintiff to take the two older children and the Legacy Defendants would keep the younger two children.  ECF No. 58 at 9.  However, when Plaintiff advised that DCF wanted to keep all four "children together as an intact family," the Legacy Defendants kept all four children and stopped communicating with Plaintiff.  *Id.* at 9-10.

At some point thereafter, Defendant Porter "transferred the case to Children's Home Society employee Jennifer Smith."  *Id.* at 10.  Defendant Smith informed Plaintiff that the children would remain "with the Legacys' [sic] as she was the grandmother . . . ."  *Id.* at 11.[3]  Plaintiff's questioning of that decision resulted in Plaintiff being informed that she could have

---

[3] It appears that Plaintiff is the maternal biological grandmother of all four children.  The Legacy Defendants are, presumably, paternal biological grandparents of two of the children.  *See* ECF No. 58 at 5, 11.

unsupervised visits with the children, and Plaintiff responding that she "would be filing complaints and a dispute." *Id.*

Plaintiff indicates she filed complaints, and Defendant "Smith refused to inform" her about the next scheduled court date. ECF No. 58 at 11. However, after filing a complaint "with the then acting CEO of Children's Home Society, [Defendant] Smith was forced to give Plaintiff information on the next court hearing." *Id.*

Plaintiff attended the hearing, but complains that when she "respectfully stood up and raised [her] hand to correct the perjured documents and testimony by Defendants Smith and Barclay," Defendant Clark - the presiding state court judge - denied her the ability to do so. *Id.* at 11-12. The Legacy Defendants complained to the court that Plaintiff was sending gifts to the grandchildren at their home. *Id.* at 12. Plaintiff was then inexplicitly "forced" by Defendants Garcia, Jordan, Smith and Burke[4] to send gifts to DCF and the agency would then deliver the gifts to the Legacy house. *Id.*

---

[4] Defendant Ana Maria Garcia is a state court Judge. ECF No. 58 at 6. Defendant Jessica Jordan "was an attorney for plaintiff's daughter," and Defendant Jennifer Smith was an employee with Children's Home Society. *Id.* Defendant Daniel Burke "was an attorney for the state of Florida." *Id.* at 7.

Plaintiff alleged that Defendant Suzanne Beam, an employee of either DCF or Children's Home Society, informed Plaintiff that she and her husband must undergo "drug testing prior to each visit" with the children. ECF No. 58 at 7, 14.  Plaintiff contends she has "never done drugs, let alone had a problem with drugs or any substance."  *Id.* at 14.  She claims that requirement was "a violation of search and seizure, retaliatory, and intentional cruel and unusual punishments."  *Id.*

Allegedly, the Legacy Defendants "began to use undue influence and threats to keep the grandchildren from seeing" Plaintiff.  *Id.* at 12.  Plaintiff claimed that the "eldest female grandchild was being induced with toys and special privileges to stop visits with Plaintiff."  *Id.* at 14.[5]  Those facts necessarily occurred prior to June 2017 when the eldest grandson told Plaintiff that his eldest "sister would no longer be coming on visits . . . ."  *Id.* at 14-15.  By November 2017, only the youngest two grandchildren would visit with Plaintiff.  *Id.* at 18.  Plaintiff alleges that the eldest grandson stopped coming to visits also due to "undue influence" from the Legacy Defendants.  *Id.*

---

[5] Plaintiff said that after the instruction to take a drug test before visits, she had only one "last visit . . . with all four of her grandchildren," but the dates of those incidents are not alleged.  ECF No. 58 at 14.

In December 2017, during a telephone hearing with DCF, Children's

Home Society and their counsel, Plaintiff, her spouse, and their attorney,

Defendant state court judge Garcia granted a request to terminate visitation

with the children.  ECF No. 58 at 18.  At some point thereafter, Plaintiff

obtained a "private adoption study" which approved her home for adoption.

*Id.* at 19-20.  Plaintiff filed a motion to intervene in the dependency case.

*Id.* at 19, 21.  After a hearing, the motion was denied by Defendant Garcia,

in part because of "a 2009 misdemeanor domestic violence incident[6] and

the 'bonding' with the Legacy's." *Id.* at 21, 22.  Plaintiff, through counsel,

"appealed the denial of intervention."  *Id.* at 23.

After Hurricane Michael caused extensive damage to Bay County,

Florida, and destroyed the home of the Legacy's, Defendant Garcia

allowed the Legacy Defendants to "take the children to Alabama and then

eventually to Texas."  *Id.* at 24.  Plaintiff alleges that neither she nor her

daughter Brianna (the mother of the four children) "were told the children

moved out of state," despite that fact that Brianna still "retained her

---

[6] Plaintiff said that her husband's domestic violence incident was nolle prossed.
ECF No. 58 at 22.

parental rights."  *Id.*  According to Plaintiff, she and her daughter learned "about a year later" that the children had moved out of state.  *Id.* at 24.[7]

In April 2019, a "trial" was held for the termination of Brianna's parental rights.  ECF No. 58 at 24.  Brianna was represented by counsel, Defendant Christopher Scott, and Plaintiff complains that Scott refused to allow Plaintiff and her spouse to testify as a witness.  *Id.* at 25.  Defendant Scott terminated Brianna's parental "rights in July of 2019; however, [P]laintiff and her daughter did not find out until January of 2020."  *Id.* at 28. Plaintiff contends that at the time of the termination, she had a pending petition to adopt[8] her grandchildren which was "waiting" a decision concerning the termination.  *Id.* at 29.

At some point in "late 2020," Plaintiff "accidentally" learned that the grandchildren had been adopted.  ECF No. 58 at 29.  Around that same time period, Defendants Andrea and James Douglas returned gifts to

---

[7] That allegation is not entirely clear or consistent with other facts alleged. Plaintiff indicates that at the time they learned the children had moved out of state, Brianna still had her parental rights and it was about a year after Hurricane Michael. ECF No. 58 at 24.  Hurricane Michael hit Florida in October 2018, and Plaintiff elsewhere said that Brianna's termination of rights occurred in July of 2019, although they did not find out about the order until January 2020.  ECF No. 28.  That time line of events is not clear, nor is the date when Plaintiff learn about the termination decision.

[8] Plaintiff does not allege when or where she filed the petition for adoption, nor does she state whether or not she was represented by counsel.

Plaintiff which had been sent to the grandchildren. *Id.* at 29. Plaintiff alleges that returning the unopened gifts without explanation was "cruel and deliberate." *Id.* She further claims the Douglas Defendants "no longer allowed Plaintiff to send" gifts to the children. *Id.*, n.43.

Despite that knowledge, Plaintiff and her husband drove to Texas in January 2021 in an attempt to deliver gifts to the grandchildren. *Id.* Prior to going to the "Legacy's home" in Texas, Plaintiff requested a police escort. *Id.* at 29-30. Through that contact, Plaintiff contends she learned that the children were no longer with the Legacy's, that they "gave the children back," and Mr. Legacy was no longer residing at the residence with Mrs. Legacy. *Id.* at 30.[9]

In February or March of 2024, DCF allegedly contacted Plaintiff when the "Douglas Defendants could no longer handle the eldest grandson and returned him back to 'DCF.'" *Id.* at 31. DCF asked if Plaintiff was "interested in adopting her grandson," to which Plaintiff "said definitely." *Id.* at 32. Yet after dangling "the carrot" in front of her, DCF at some point,

---

[9] At another point in the complaint, Plaintiff claimed that because of health and financial concerns, the Legacy Defendants surrendered the children "back to DCF . . . less than three years after removal and placement." *Id.* at 8-9. Accepting Plaintiff's statement that the children were removed from her daughter Brianna in August 2016, this event would have occurred by August of 2019. *Id.* at 8.

"intentionally, and purposefully yank[ed] the carrot away."  ECF No. 58 at

32.

**Claim Raised in the Amended Complaint**

Counts 1-4, 7-8, and 10 are brought pursuant to 42 U.S.C. § 1983.

Plaintiff also asserts state law claims.  ECF No. 58 at 32-48.

Although Plaintiff states that Count 1 is brought "Against All

Defendants," *id.* at 32, she then identifies this as a First Amendment claim

which is brought against Defendants Clark, Kennedy, Smith, Garcia,

Legacy, Scott, Jordan, Burke, Adeoti, Cuff, Porter, and Flemming for

retaliation.  *Id.* at 33.

Count 2 is a Fourth Amendment claim for illegal search and seizure,

brought against 9 Defendants - Garcia, Beam, Kennedy, Smith, Burke,

Adeoti, Harris, Jordan, and Scott for requiring her "to undergo evasive and

embarrassing drug testing . . . ."  *Id.* at 34-35.  Improperly alleged within

Count 2 is Plaintiff's claim that the Douglas Defendants violated her equal

protection rights (which is not a Fourth Amendment claim) because they

allowed the Legacy Defendants to continue having a relationship with the

children "after they gave the children back to 'DCF' . . . ."  *Id.* at 36.

Count 3 is a claim for "Failure to Intervene in Violation of the Fourth Amendment." *Id.* at 37.  It is asserted against all Defendants, and claims the Defendants "had a duty to intervene."  Without further explanation, Plaintiff contends that "[a]ll Defendants are guilty of bystander liability." *Id.* at 37.

Count 4 is against all Defendants for conspiring "to alienate the Plaintiff from her biological children." *Id.* at 37-38.  She contends all of the Defendants conspired to the illegal search and seizure of her body, to retaliate, and deny Plaintiff's "right to access the courts . . . ." *Id.* at 39.

Count 5, also asserted against all Defendants, is a state law claim for the intentional infliction of emotional distress. *Id.* at 39-40.  She claims the Defendants tried to "break the bond" between she and her grandchildren through "deplorable actions . . . ." *Id.* at 40.  As a result, Plaintiff says she "has suffered for over eight years and will continue to suffer her entire life." *Id.*

Count 6 is a state law claim for "alienation of affections," also against all Defendants. *Id.* at 41.  It is duplicative of Count 5.

Count 7 is another § 1983 claim for retaliation in violation of the First Amendment. *Id.* at 42.  It is redundant to Count 1 of the complaint.

Count 8 is an Eighth Amendment claim against all Defendants.  *Id.* at 42.  Plaintiff contends Defendants' actions were "wanton, reckless, callous, and malicious" and caused her "to suffer" in the past and in the future.  *Id.* at 43.

Count 9 is an equal protection claim[10] against all Defendants.  *Id.* at 43.  She appears to assert that she "had to spend excessive amounts of money on a private lawyer," while the Legacy Defendants "got everything from 'DCF' and Children's Home Society."  *Id.* at 44.  Plaintiff further complains again that efforts were made to "break the children's bond" with her and her family.  *Id.*

Count 10 is a § 1983 claim for "Monell Liability against all Defendants."  *Id.* at 44.  She contends that both DCF and Children's Home Society "are policy makers."  *Id.* at 45.

Count 11 is a state law loss of consortium claim against all Defendants.  *Id.* at 45-46.  Again, that claim is based on Plaintiff's contention that Defendants tried to break the biological bond between Plaintiff and her grandchildren.  *Id.*

---

[10] Plaintiff does not allege that this claim is brought pursuant to 42 U.S.C. § 1983.

Case No. 4:24cv529-MW-MAF

Count 12 is for "undue enrichment" and is against all defendants. *Id.* at 47. Plaintiff asserts that she had sufficient income to raise her grandchildren, but the Legacy Defendants "required state and federal taxpayer assistance." *Id.* Plaintiff makes a conclusory assertion that "[a]ll defendants, and this means all, benefited [sic] in some way, shape or form, by these federal and state taxpayer dollars." *Id.* She asserts that Defendants intended "to intentionally defraud in direct violation of the False Claims Act." *Id.*

As relief, Plaintiff seeks "general damages" and punitive damages. *Id.* at 48. She also seeks a 30% relator fee for the False Claims Act violation. *Id.* at 49.

**Standard of Review**

The first two motions to dismiss were filed pursuant to Federal Rule of Civil Procedure 12(b)(1),(6), among other arguments. ECF Nos. 59, 60. In ruling on a Rule 12(b)(6) motion, the Court must determine whether a complaint alleges "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Detailed factual allegations are not required, but Plaintiff must provide "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do."

Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65.  Furthermore, the facts of

a well-pleaded complaint must be accepted as true and the case should

proceed even if it appears "that actual proof of those facts is improbable,

and 'that a recovery is very remote and unlikely.'"  550 U.S. at 556, 127 S.

Ct. at 1965 (citations omitted).

        The pleading standard is not heightened, but flexible, in line with Rule

8's command to simply give fair notice to the defendant of the plaintiff's

claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534

U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s

simplified pleading standard applies to all civil actions, with limited

exceptions.").  Pro se complaints are held to less stringent standards than

those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th

Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594,

596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide

sufficient notice of the claim and the grounds upon which it rests so that a

"largely groundless claim" does not proceed through discovery and "take

up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc.

v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in <u>Twombly</u>, 550 U.S. at 558).   In other words, a motion to dismiss considers the legal sufficiency of a complaint, but does not determine whether the Plaintiff will ultimately prevail.  <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002) (citing to <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## A.   Shotgun Pleading

Defendants have argued that Plaintiff's amended complaint is an impermissible shotgun pleading.  ECF No. 60 at 21-22.  Shotgun pleadings have been condemned by the Eleventh Circuit Court of Appeals time and time again.  *See* <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792 F.3d 1313, 1320 (11th Cir. 2015) (stating that a complaint must present a claim succinctly such that a defendant can discern the basis for the plaintiff's claim and "frame a responsive pleading") (citation omitted).  The Eleventh Circuit has explained the four categories of shotgun pleadings as follows:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of

re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Weiland, 792 F.3d at 1321-23.

Here, Defendants argue that Plaintiff's amended complaint "meets the criteria for the first, second, and fourth type of shotgun pleadings."  ECF No. 60 at 22.  The Court agrees.

In presenting each of Plaintiff's 12 claims, Plaintiff "incorporates and re-alleges by reference all of the proceeding paragraphs in this complaint." ECF No. 57 at 32, 34, 37, 38, 39, 41, 42, 43, 45, 47.  That is, Plaintiff incorporated all 76 numbered paragraphs into each claim, and each successive included all prior counts of the complaint.  That is, by definition, the first type of shotgun pleading.

Additionally, the amended complaint is filled with conclusory assertions disguised as facts, and a litany of immaterial facts which are not obviously connected to any specific cause of action or a particular Defendant.  Plaintiff's statement of her claims does not relate back to any specific factual allegation, and merely "incorporating" all facts alleged from the prior multitude of facts asserted is insufficient.  The 22 named Defendants do not have adequate notice of the basis for the multiple claims asserted against them.  This is a shotgun pleading.  Because Plaintiff has already been provided opportunities to amend - and Plaintiff refused to do so initially, *see* ECF No. 9 - it is recommended that this case be dismissed.

**B.    Statute of Limitations**

All three motions to dismiss raise the statute of limitations as a defense to Plaintiff's claims.  ECF No. 59 at 9-10; ECF No. 60 at 9-12; ECF No. 66 at 1.  That defense provides another sufficient reason to dismiss this case.

The statute of limitations for a § 1983 action in federal court is governed by the forum state's general personal injury statute of limitations. McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008) ("All constitutional claims brought under § 1983 are tort actions, subject to the statute of

limitations governing personal injury actions in the state where the § 1983

action has been brought") (citing to Wilson v. Garcia, 471 U.S. 261, 275-76,

105 S. Ct. 1938, 1946-47, 85 L. Ed. 2d 254 (1985)); *see also* Owens v.

Okure, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989))).

Florida observes a four year personal injury statute of limitations.  *See*

Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999);

Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003); McGroarty v.

Swearingen, 977 F.3d 1302, 1307 (11th Cir. 2020) ("Specifically, a plaintiff

must commence a § 1983 claim arising in Florida within four years of the

allegedly unconstitutional or otherwise illegal act.").

Plaintiff complains of events which span from August 2016 through

the early part of 2024.  ECF No. 57.  However, the only allegations which

are alleged which conceivably support Plaintiff's claims against the

Defendants occurred between 2016 and 2019.  There were no facts

alleged which identify wrongful actions of the Defendants after 2019.  *Id.*

Indeed, the only events alleged which occurred after 2019 were:

    January 2020 - Plaintiff learned of the termination order

    Late 2020 - Plaintiff found out the children were adopted

    Late 2020 - gifts to the grandchildren were returned

Case No. 4:24cv529-MW-MAF

January 2021 - Defendant Daena Legacy yelled at Plaintiff

2024 - DCF asked Plaintiff of her interest in adopting a grandson

ECF No. 58 at 28-32.  None of those alleged events are unlawful or unconstitutional.

The reality is, Plaintiff's amended complaint seeks relief concerning events which occurred more than four years before this case was filed. This case was initiated on December 26, 2024.  ECF No. 1.  Thus, all of Plaintiff's claims are barred by the statute of limitations.

Plaintiff attempts to save her claims with the contention that she detected a "conspiracy" in May of 2025.  ECF No. 63 at 7.  However, the amended complaint is devoid of any facts which support Plaintiff's conspiracy theory.

While a conspiracy claim could be brought under 42 U.S.C. § 1983, Kearson v. S. Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (noting that § 1983 is the statute "which provides remedies for conspiracies to interfere with certain civil rights"), Plaintiff did not allege facts to support that claim.  See Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010) (stating that a "plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted

in the actual denial of some underlying constitutional right").  A conspiracy

claim requires a plaintiff to "show that the parties reached an

understanding."  <u>Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.</u>, 956

F.2d 1112, 1122 (11th Cir. 1992) (internal quotation marks and citation

omitted).  "The complaint must inform the defendants 'of the nature of the

conspiracy which is alleged. It is not enough to simply aver in the complaint

that a conspiracy existed.'"  <u>Fullman v. Graddick</u>, 739 F.2d 553, 557 (11th

Cir. 1984) (quoted in <u>Wilk v. St. Lucie Cnty. Fla. Sheriff Off.</u>, 740 F. App'x

658, 663 (11th Cir. 2018)).  The "conclusory, vague, and general

allegations of conspiracy . . . justify dismissal of a complaint."  <u>Kearson</u>,

763 F.2d at 407.  Here, Plaintiff did not allege facts to show "the parties

had a 'meeting of the minds' or reached an understanding to violate the

plaintiff's rights . . . ."  <u>Bailey</u>., 956 F.2d at 1122 (quoted in <u>Spadaro v. City

of Miramar</u>, 855 F. Supp. 2d 1317, 1346 (S.D. Fla. 2012)).  There are no

allegations of communications or agreements made between the

Defendants.  There are also no allegations which explain how Plaintiff

belatedly learned of the conspiracy in May 2025.  The essential facts raised

in the amended complaint, ECF No. 58, are the same as the facts

presented against the Defendants in the initial complaint, ECF No. 1, filed

in December 2024.[11]  Thus, Plaintiff's unexplained argument of belatedly learning of a conspiracy does not save her claims from the statute of limitations.

Furthermore, the fact alleged in 2020 - that the Douglas Defendants sought to adopt the four grandchildren - is not a constitutional violation, nor is the failure to comply with a Florida Rule of Procedure.  *See* ECF No. 63 at 7-8.  It is well established that § 1983 "does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."  Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002) (quoted in March v. Dep't of Children and Families, No. 2:03cv162, 2006 WL 2644917 (M.D. Fla. Sept. 14, 2006)).  Put another way, a violation of state law is insufficient to support a federal civil rights claim. Dean v. Escambia Cnty., No. 3:05cv29/LAC/MD, 2005 WL 927387 (N.D. Fla. Apr. 20, 2005) (holding that "[a]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the

---

[11] The initial complaint included 77 numbered paragraphs, spanning 27 pages, raising 12 separate claims, based on the same facts alleged in the amended complaint. The amended complaint also includes 77 numbered paragraphs, spanning 32 pages, but also raising 12 claims.  ECF No. 58.  The primary difference between the two complaints is Plaintiff's reference in Count 12 of the False Claims Act.  *Id.* at 48.

right encompassed in the state statute is guaranteed under the United

States Constitution").

In addition, Plaintiff's argument that she did not fully realize or

understand the Defendants' actions until May of 2025 is immaterial. ECF

No. 63 at 14. Plaintiff claims she was unaware of the adoption of the

children until recently, but that fact has no bearing on the claims that she

brings against the 22 named Defendants. That is because this case does

not challenge an adoption order;[12] rather, it challenges the actions of

persons *prior to* the adoption. It challenges events in 2016, 2017, 2018,

and 2019, and Plaintiff did not include factual allegations which show or

explain that she was not aware of those events until recently. All of the

facts which are relevant to Plaintiff's 12-count amended complaint occurred

prior to December 2020. Because this case was filed on December 26,

2024, ECF No. 1, the claims are bared by the statute of limitations.

## C.    Fails to state a claim

Even though the claims are barred by the statute of limitations, each

of Plaintiff's claims should also be dismissed for failure to state a claim, or

---

[12] Plaintiff's prior objections clearly state that "she is not seeking a directive from this court to overturn any adoption" and acknowledges that "this court does not have the authority or jurisdiction to do that." ECF No. 49 at 2.

as frivolous.  Count 1 is a First Amendment claim, allegedly for retaliation.

However, that claim is unsupported by facts which show that Plaintiff

suffered an adverse action for engaging in constitutionally protected

speech.  Plaintiff did not allege facts which show that any specific

Defendant took a particular action because of Plaintiff's exercise of her

First Amendment rights.  A conclusory allegation is insufficient to support a

retaliation claim.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937,

1949, 173 L. Ed. 2d 868 (2009) ("A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.'") (citation omitted).  Plaintiff does not include facts which show

that a specific Defendant was aware of Plaintiff's particular First

Amendment activities and then, took adverse action against her because of

that action.  Plaintiff's retaliation claim as presented in Count 1 should be

dismissed.  Likewise, Count 7 should also be dismissed because it is

redundant to Count 1's retaliation claim.

Count 2 is the Fourth Amendment claim for an "illegal search and

seizure."  It's based on the allegation that Plaintiff was forced to take a drug

test prior to visits with the grandchildren.  However, no facts were alleged

to show which Defendant imposed that requirement.  The claim is insufficient.

Count 3 is for failing to intervene in the violation of Plaintiff's Fourth Amendment rights.  It was asserted against all Defendants, but Plaintiff failed to allege facts which show that any particular Defendant was in a position to "intervene."  Furthermore, without an allegation as to which Defendant imposed the drug testing requirement, it is far from clear that a Defendant could lawfully intervene.  Moreover, Plaintiff has not alleged facts which support her claim than any Defendant had a "duty" to intervene. This claim is insufficient and should be dismissed.

In Count 4, Plaintiff contends all Defendants conspired "to alienate" her from her "biological children."  *Id.* at 37-38.  Even assuming that Plaintiff intended to say that persons attempted alienate her *grandchildren* from her, there were no facts presented to support a conspiracy claim as explained in greater detail above.

Plaintiff's Eighth Amendment claim as presented in Count 8 also fails to state a claim.  The Eighth Amendment is applicable to persons who have been convicted of crimes and are incarcerated.  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1572 (11th Cir. 1985) (finding that the Eighth Amendment

"applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime").  Because Plaintiff is not, and was not, incarcerated at the time of these events, she fails to state an Eighth Amendment claim.

Count 9 is an equal protection claim that is unsupported by facts which show that any named Defendant treated Plaintiff differently than other persons.  Moreover, the basis for the claim is frivolous.  Plaintiff complained that she "had to spend excessive amounts of money on a private lawyer," while the Legacy Defendants "got everything from 'DCF' and Children's Home Society."  *Id.* at 44.  Plaintiff is not similarly situated to the Legacy Defendants because they were court appointed as foster parents for the grandchildren.  Plaintiff did not have such an appointment. The equal protection claim should be dismissed.

Count 10 is also a frivolous claim in which Plaintiff seeks to impose "Monell Liability against all Defendants."  *Id.* at 44.  In <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a civil rights plaintiff could sue a municipal entity if the plaintiff could "show that their injury was caused by a municipal policy or custom."  <u>Los Angeles Cnty., Cal. v. Humphries</u>, 562

U.S. 29, 30–31, 131 S. Ct. 447, 449, 178 L. Ed. 2d 460 (2010) (explaining

Monell).  However, Plaintiff is not suing a municipality because of a policy

or custom.  Plaintiff has not alleged that a policy or custom was involved in

this case.  The claim is frivolous and should be dismissed.

That leaves Plaintiff's state law claims as presented in Counts 5, 6,

and 11.  All of those claims were conclusory and unsupported by facts as

to each and every Defendant named.

Moreover, Counts 5 and 6 were duplicative claims for the intentional

infliction of emotional distress.[13]  Such a claim requires allegations which

show: "1) extreme and outrageous conduct; 2) an intent to cause, or

reckless disregard to the probability of causing, emotional distress; 3)

severe emotional distress suffered by the plaintiff and 4) that the conduct

complained of caused the plaintiff's severe emotional distress."  Broberg v.

---

[13] To the degree Count 6 was intended to separately present a claim for
alienation of affection, Defendants have correctly shown that there is no such cause of
action under Florida law.  ECF No. 59 at 17 (citing to § 771.01, Florida Statutes (2020);
Davis v. Hilton, 780 So. 2d 974, 975 (Fla. 4th DCA 2001). *See also* Hutzel v. Franklin,
No. 5:21-CV-40-RH/MJF, 2021 WL 3502483, at *2 (N.D. Fla. July 19, 2021), report and
recommendation adopted, No. 5:21CV40-RH-MJF, 2021 WL 3491754 (N.D. Fla. Aug. 9,
2021) (stating "a more carefully drafted complaint could not state a claim for alienation
of affections because such a cause of action no longer exists under Florida law");
Wardak v. Goolden, No. 1:19-CV-21121-RAR, 2020 WL 9718811, at *4 (S.D. Fla. May
22, 2020) (noting that § 771.01, known as the "heart balm statute," has been
abolished).

<u>Carnival Corp.</u>, 303 F. Supp. 3d 1313, 1317–18 (S.D. Fla. 2017) (citing to

<u>Blair v. NCL (Bahamas) Ltd.</u>, 212 F.Supp.3d 1264, 1269 (S.D. Fla. 2016)

(citing <u>Metropolitan Life Insurance Co. v. McCarson</u>, 467 So.2d 277, 278

(Fla. 1985)).  The first element requires allegations showing conduct that is

"so outrageous in character, and so extreme in degree, as to go beyond all

bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized community." <u>Metropolitan Life</u>, 467 So.2d at 278-79 (quoted in

<u>Broberg</u>, 303 F. Supp. 3d at 1317).  Showing "outrageous conduct" is an

"extremely high standard," and Plaintiff's amended complaint does not

make that demonstration.  Moreover, Plaintiff did not allege facts which

show that any named Defendant acted with an "intent" to cause Plaintiff

emotional distress.  The loss of Plaintiff's beloved grandchildren would

naturally result in emotional distress, but Plaintiff has not presented facts

which show that any Defendant intended that result or took actions which

were outrageous.  Those state law claims should be dismissed for failure ot

state a claim.

Count 11 was for loss of consortium, asserted against all Defendants.

*Id.* at 45-46.  Again, that claim is based on Plaintiff's contention that

Defendants tried to break the biological bond between Plaintiff and her

grandchildren.  *Id.*  First, Plaintiff did not present facts to support her conclusory assertion that Defendants had such an intent.  Second, as pointed out by Defendants, such a claim must be based on a spousal relationship or a parent-child relationship.[14]  ECF No. 59 at 19-20 (citing to Castro v. Linfante, 307 So. 3d 110, 112 (Fla. 3d DCA 2020)).  Plaintiff has pointed to no basis under Florida law to support a loss of consortium claim for grandchildren.  This claim should be dismissed.

Finally, Count 12 is titled as a claim for "undue enrichment;" it appears that Plaintiff is contending that because the Legacy Defendants "required state and federal taxpayer assistance," they were unjustly enriched in violation of state law.  It also appears that Plaintiff uses this same assertion to support her federal claim under the "False Claims Act."

As correctly argued by Defendants, *see* ECF No. 59 at 20, a cause of action for unjust enrichment has the following elements: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2)

---

[14] Florida statute 768.0415 provides: "A person who, through negligence, causes significant permanent injury to the natural or adoptive parent of an unmarried dependent resulting in a permanent total disability shall be liable to the dependent for damages, including damages for permanent loss of services, comfort, companionship, and society."  In addition, § 768.21(2),(3) provide for loss of consortium after a wrongful death, but only for a "surviving spouse" or "minor children of the decedent."

Case No. 4:24cv529-MW-MAF

defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. Dist. Ct. App. 2018) (quoting Agritrade, LP v. Quercia, 253 So. 3d 28, 33 (Fla. Dist. Ct. App. 2017)) (quoted in AIM Recycling Fla., LLC v. Metals USA, Inc., No. 18-60292-CIV, 2019 WL 1991946, at *1 (S.D. Fla. Mar. 4, 2019)). Defendants argue that Plaintiff's claim is insufficient as a matter of law because, first and foremost, "Plaintiff has not alleged that she conferred any benefit upon any Defendant." ECF No. 59 at 20. That is a fatal flaw in Plaintiff's state law claim, and the unjust enrichment claim must be dismissed.

To the degree Plaintiff also brings this as a claim under the False Claims Act, Defendants argues that this claim is insufficient. ECF No. 60 at 14-16. "At the pleading stage, a complaint alleging violations of the False Claims Act must satisfy two requirements." United States v. HPC Healthcare, Inc., 723 F. App'x 783, 789 (11th Cir. 2018). First, as required by Rule 8(a), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." HPC Healthcare, 723 F.

App'x at 789 (citing Fed. R. Civ. P. 8(a)(2)).  As noted above, Plaintiff's

amended complaint is a shotgun pleading and does not comply with Rule

8.  "Second, the complaint must satisfy Rule 9(b)'s heightened pleading

requirement for claims alleging fraud."  723 F. App'x at 789.  "That is, it

must 'state with particularity the circumstances constituting fraud or

mistake.'"  *Id.*; Fed. R. Civ. P. 9(b); *see also* U.S. ex rel. Clausen v. Lab.

Corp. of Am., 290 F.3d 1301, 1308-09 (11th Cir. 2002) (holding Rule 9(b)

applies to False Claims Act claims).  "Under Rule 9(b), the plaintiff must

plead 'facts as to time, place, and substance of the defendant's alleged

fraud,' including 'the details of the defendants' allegedly fraudulent acts,

when they occurred, and who engaged in them.'"  Clausen, 290 F.3d at

1310 (quoted in HPC Healthcare, Inc., 723 F. App'x at 789).  Plaintiff's

amended complaint falls woefully short.  There are no allegations which

reveal who engaged in fraud, what actions were fraudulent, or when the

alleged fraud occurred.  Plaintiff's conclusory assertion of a False Claims

Act violation is insufficient, fails to state a claim, and should be dismissed.

Because Plaintiff's amended complaint fails to state a claim, in

addition to the statute of limitations issue, there is no need to review the

other defenses asserted.  ECF Nos. 59-60, 66.  Dismissal is appropriate.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the three pending motions to dismiss, ECF Nos. 59-60 and 66, be **GRANTED** and Plaintiff's amended complaint, ECF No. 58, be **DISMISSED** with prejudice as barred by the statute of limitations, because it is an impermissible shotgun pleading, and because it fails to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on January 26, 2026.


     S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**